IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 07-cv-02096-REB-KMT

EDUARDO A. JOHNSON,

    Plaintiff,

v.

ARAPAHOE COUNTY SHERIFF'S DEPARTMENT,
OFFICER MARK ORTLER,
OFFICER MATT WALKER,
OFFICER ROB HOFFMAN,
OFFICER JON SCHOTT, and
OFFICER DENNIS ERICKSON,

    Defendants.

# RECOMMENDATION OF UNITED STATES MAGISTRATE JUDGE

**Magistrate Judge Kathleen M. Tafoya**

This case involves claims that Defendants violated Plaintiff's First, Fourth, and Fourteenth Amendment rights. This matter is before the court on "Defendants' Motion and Brief for Summary Judgment" (Doc. No. 44) and Plaintiff's Motion and Brief for Summary Judgment" (Doc. No. 52). Jurisdiction is asserted under 42 U.S.C. §§ 1983, 1985, and 1986 (2007).

## STATEMENT OF THE CASE

The following facts are taken from Plaintiff's Complaint and the parties' submissions with respect to this Recommendation. This case arises out of a criminal investigation conducted by Arapahoe County Sheriff's Office ("ASCO") investigators into a homicide committed by Plaintiff's son, Yugene Johnson, at a Conoco gas station in Centennial, Colorado, on October 21,

2005.  (Defs.' Mot. and Br. for Summ. J., Statement of Undisputed Facts ¶ 1 [hereinafter "Defs.' Br."] [filed June 23, 2008].)  Yugene Johnson went to his friend's house after he left the scene of the crime, and shortly thereafter he telephoned Plaintiff.  (*Id.* ¶ 2.)  Plaintiff and his wife, Christina Johnson, met Yugene at a McDonald's, where Yugene told Plaintiff and Mrs. Johnson that he had just shot someone.  (*Id.*)  Yugene gave Plaintiff two cell telephones and the murder weapon.  (*Id.* ¶ 3.)  Plaintiff drove his wife and Yugene to the Johnson residence, and Mrs. Johnson remained there.  (*Id.* ¶ 4.)  Plaintiff then drove Yugene to the crime scene where Yugene turned himself into the custody of ACSO.  (*Id.* ¶ 5.)  Plaintiff contends that, as he was standing outside the police crime scene with his son to his right, he noticed several police were running toward Yugene and it appeared they were going to forcibly "take him down."  (Compl. at 2.)  Plaintiff told the officers that his son was not violent and not to harass him.  (*Id.*)  Plaintiff alleges that Defendant Ortler walked up to him and hit him in the chest and whispered "what [he] believes was shut-up nigger."  (*Id.*)  According to Plaintiff, when Defendant Ortler was alerted by someone else that Plaintiff was Yugene's father, Defendant Ortler "looked at [him] with contempt and turne[ed] and walked away without an explanation of why [Defendant] Ortler hit [Plaintiff] or made the comment."  (*Id.*)

Plaintiff voluntarily drove from the crime scene to the ACSO Headquarters where he was interviewed as a witness in the criminal investigation.  (Defs.' Br., Statement of Undisputed Facts ¶ 7.)  Plaintiff was not interviewed as a suspect, was not detained, and was not under arrest at any time, and he was free to leave the interview at any time.  (*Id.* ¶ 8.)  Sgt. Glenn Thompson, who was overseeing the criminal investigation, learned that Yugene's girlfriend, Paulina

Nyugen, was at the Johnson residence and contacted another sergeant to tell him to send investigators to the Johnson residence to speak to Miss Nyugen. (*Id.* ¶ 9.)

During his interview, Yugene told an ACSO investigator that the car he was driving at the time of the homicide belonged to Miss Nyugen. (*Id.* ¶ 10.) Yugene told the investigator that the car was locked and parked in front of a friend's house and that Plaintiff had the keys. (*Id.*) Yugene also told ACSO investigators that he had changed out of the clothes he had been wearing at the time of the crime at his friend's house and that he had asked his friend to take the clothes to the Johnson residence. (*Id.* ¶ 11.) Yugene told ACSO investigators that his friend's phone number was in a cell phone Yugene had given to his parents when they picked him up at McDonald's. (*Id.* ¶ 12.) Yugene gave consent to search the phone for his friend's phone number. (*Id.*) An ASCO investigator then asked Plaintiff, as he was being interviewed, whether he could search the phone for Yugene's friend's phone number. (*Id.* ¶ 13.) Defendants state that Plaintiff refused to turn over the phone but indicated he would give the phone number to investigators when he got home. (*Id.*) Defendants assert that because of Yugene's and Plaintiff's admissions, Sgt. Thompson had probable cause to believe that the keys to Miss Nyugen's car, the cell phone, and the clothes were at the Johnson residence and that Plaintiff could destroy the evidence when he returned home. (*Id.* ¶ 14.) Therefore, Sgt. Thompson contacted Sgt. Holstein and discussed the importance of Sgt. Holstein going to the Johnson residence to obtain permission to search for evidence or securing the premises so ACSO could obtain a warrant. (*Id.* ¶ 15.)

ACSO deputies went to the Johnson residence to speak with Miss Nyugen. (*Id.* ¶ 16.) According to Defendants, Mrs. Johnson answered the door and when the deputies asked if they could come in, she responded, "Yes." (*Id.* ¶ 17.) Mrs. Johnson, Plaintiff's daughter, and Miss Nyugen were present at the Johnson residence at the time. (*Id.* ¶ 18.) Defendants assert that the deputies asked to speak with Miss Nyugen but Mrs. Johnson told the deputies that Miss Nyugen was a minor and that they needed her mother's permission. (*Id.* ¶ 19.) Miss Nyugen called her mother, who said she would be there in a couple of hours. (*Id.* ¶ 20.) Plaintiff contends that once the police were inside his home, they began to follow Mrs. Johnson around without her permission. (Compl. at 3.)

ACSO officers were advised by Sgt. Holstein to secure the premises until his arrival or to see if they could get permission to search the premises. (Defs.' Br., Statement of Undisputed Facts ¶ 21.) Defendants assert that they told Mrs. Johnson they were looking for Yugene's clothes and the keys to the car he was driving at the time of the incident. (*Id.* ¶ 22.) Mrs. Johnson contacted Plaintiff by telephone and asked him whether the deputies could search the Johnson residence, but Plaintiff told Mrs. Johnson the deputies would have to wait until he got home. (*Id.* ¶ 23–24.) Plaintiff alleges that the officers would not state what it was they were looking for. (Compl. at 3.)

According to Defendants, when Plaintiff arrived home Defendant Hoffman asked him for permission to search the house to look for a phone, the car keys, and clothes that belonged to Yugene. (Defs.' Br., Statement of Undisputed Facts ¶ 25.) Defendants assert that Plaintiff gave Defendant Hoffman a key to the car and a Nextel phone and advised Defendant Hoffman that

4

Yugene had a second phone, a T-Mobile Sidekick II, but Plaintiff did not know where it was. (*Id.* ¶ 26.) Defendants contend that Sgt. Holstein then arrived at the Johnson residence and Plaintiff relayed his concerns with the deputies being at his home. (*Id.* ¶ 27.) Defendants again assert that Sgt. Holstein explained to Plaintiff what the deputies were looking for, and Plaintiff said Defendant Hoffman could search Yugene's bedroom as long as he removed his shoes. (*Id.* ¶ 28.) Plaintiff contends that the police would not tell him what they were looking for, so he told them they could not search the house. (Compl. at 3.) Plaintiff states the officers told them they were going to get a warrant, and he replied, "O.K." (*Id.*)

Plaintiff instructed his wife and daughter to leave the Johnson residence while the officers were present, and, according to Defendants, both of them left without any resistance by law enforcement. (Defs.' Br., Statement of Undisputed Facts ¶ 31.) Plaintiff asserts that as Mrs. Johnson tried to leave the house, one of the officers stood behind the vehicle parked in the driveway, forcing Mrs. Johnson to take another vehicle parked in front of the house. (Compl. at 3–4.) Plaintiff alleges that Mrs. Johnson was followed by one the officers. (*Id.* at 4.) Defendants assert that Sgt. Holstein and Defendant Hoffman ascertained that Plaintiff had standing to consent to the search of the bedroom and confirmed that he was giving verbal consent. (Defs.' Br., Statement of Undisputed Facts ¶ 32.) Plaintiff states the officers followed him around his house and would not even let him go to the bathroom without following him. (Compl. at 3.) Plaintiff also asserts he twice told the officers to leave his home but the officers refused and looked at him with contempt. (*Id.* at 3–4.) Defendants contend that Plaintiff did not tell any of the deputies to leave his house. (Defs.' Br., Statement of Undisputed Facts ¶ 34.)

5

Finally, according to Plaintiff, after the officers continued to ask him for permission to search his home, Plaintiff, "under distress told the officers to go ahead and search" so "the officers would leave and Mr. Johnson's wife and daughter could come home." (Compl. at 4.) Plaintiff videotaped Defendant Hoffman as he conducted the search. (Defs.' Br., Statement of Undisputed Facts ¶ 33.) Defendants assert that while the search was ongoing, Sgt. Thompson contacted Defendant Hoffman and informed him the phone had been recovered elsewhere, and Defendant Hoffman immediately ceased searching the room without seizing any evidence other than what the Plaintiff had voluntarily given them. (*Id.* ¶ 35.)

## PROCEDURAL HISTORY

On October 5, 2007, Plaintiff filed his Complaint, asserting that Defendants deprived him of his constitutional rights because of his ethnicity. (Compl.) Plaintiff has named as defendants the Arapahoe County Sheriff's Department and Officers Mark Ortler, Matt Walker, Rob Hoffman, Jon Schott, and Dennis Erickson, employees of the ASCO. (Civil Compl. at 1 [hereinafter "Compl."] [filed October 5, 2007].) Plaintiff asserts that Defendants violated his First, Fourth, and Fourteenth Amendment rights. (*See* Compl.) Plaintiff seeks compensatory and punitive damages. (*Id.* at 4.)

Defendants filed their motion for summary judgment on June 23, 2008. (Defs.' Br.) Defendants seek summary judgment on the bases that (1) Plaintiff cannot prove any Fist Amendment violation; (2) Plaintiff's cannot prove any claim for a Fourth Amendment violation for an unreasonable search; (3) Plaintiff's cannot prove any claim for violation of the Equal Protection Clause of the Fourteenth Amendment; (4) Plaintiff cannot prove any constitutional or

6

state claims for false arrest, imprisonment, and/or detention; (5) Defendants are entitled to qualified immunity in their individual capacities; (6) Plaintiff has failed to establish personal jurisdiction over the ACSO; and (7) Plaintiff cannot prove an official capacity claim against Defendant Robinson. (*See* Defs.' Br.) Plaintiff filed his response on July 21, 2008. (Pl.'s Mot. to Dismiss Summ. J. [hereinafter "Pl.'s Resp."].) Defendants filed their reply on July 30, 2008. (Defs.' Reply Supporting Summ. J. [hereinafter "Defs.' Reply"].)

Plaintiff filed his motion for summary judgment on July 1, 2008. (Pl.'s Mot. and Br. for Summ. J. Req. for Summ. J. [hereinafter "Pl.'s Br."].) Defendants filed their response on July 14, 2008. (Defs.' Resp. to Pl.'s Mot. and Br. for Summ. J." [hereinafter "Defs.' Resp.].) Plaintiff did not file a reply. These motions are ripe for review and recommendation.

## STANDARD OF REVIEW

### 1.  Pro Se *Plaintiff*

Plaintiff is proceeding *pro se*. The court, therefore, "review[s] his pleadings and other papers liberally and hold[s] them to a less stringent standard than those drafted by attorneys." *Trackwell v. United States*, 472 F.3d 1242, 1243 (10th Cir. 2007) (citations omitted). *See also Haines v. Kerner*, 404 U.S. 519, 520-21 (1972) (holding allegations of a *pro se* complaint "to less stringent standards than formal pleadings drafted by lawyers"). However, a *pro se* litigant's "conclusory allegations without supporting factual averments are insufficient to state a claim upon which relief can be based." *Hall v. Bellmon,* 935 F.2d 1106, 1110 (10th Cir. 1991). A court may not assume that a plaintiff can prove facts that have not been alleged, or that a defendant has violated laws in ways that a plaintiff has not alleged. *Associated Gen. Contractors*

7

of Cal., Inc. v. Cal. State Council of Carpenters*, 459 U.S. 519, 526 (1983). *See also Whitney v. New Mexico*, 113 F.3d 1170, 1173–74 (10th Cir. 1997) (court may not "supply additional factual allegations to round out a plaintiff's complaint"); *Drake v. City of Fort Collins*, 927 F.2d 1156, 1159 (10th Cir. 1991) (the court may not "construct arguments or theories for the plaintiff in the absence of any discussion of those issues"). The plaintiff's *pro se* status does not entitle him to application of different rules. *See Montoya v. Chao*, 296 F.3d 952, 957 (10th Cir. 2002)

## 2. *Summary Judgment Standard*

Pursuant to Rule 56(c) of the Federal Rules of Civil Procedure, the court may grant summary judgment where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c) (2006); *see Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–50 (1986); *Concrete Works, Inc. v. City & County of Denver*, 36 F.3d 1513, 1517 (10th Cir. 1994). The moving party bears the initial burden of showing an absence of evidence to support the nonmoving party's case. *Celotex Corp. v. Catrett*, 477 U.S. 317, 325 (1986). "Once the moving party meets this burden, the burden shifts to the nonmoving party to demonstrate a genuine issue for trial on a material matter." *Concrete Works*, 36 F.3d at 1518 (citing *Celotex*, 477 U.S. at 325). The nonmoving party may not rest solely on the allegations in the pleadings, but must instead designate "specific facts showing that there is a genuine issue for trial." *Celotex*, 477 U.S. at 324; *see* Fed. R. Civ. P. 56(e) (2006). A fact in dispute is "material" if it might affect the outcome of the suit under the governing law; the dispute is "genuine" if the evidence is such that it might lead a reasonable

jury to return a verdict for the nonmoving party. *Allen v. Muskogee*, 119 F.3d 837, 839 (10th Cir. 1997) (citing *Anderson*, 477 U.S. at 248). The court may consider only admissible evidence when ruling on a summary judgment motion. *See World of Sleep, Inc. v. La-Z-Boy Chair Co.*, 756 F.2d 1467, 1474 (10th Cir. 1985). The factual record and reasonable inferences therefrom are viewed in the light most favorable to the party opposing summary judgment. *Byers v. City of Albuquerque*, 150 F.3d 1271, 1274 (10th Cir. 1998) (citing *Concrete Works*, 36 F.3d at 1517).

## ANALYSIS

### 1. *Claim for First Amendment Violation*

Plaintiff asserts that Defendant Ortler violated his First Amendment right by hitting him in the chest and whispering "what [he] believes was shut-up n*****" after Plaintiff told the officers at the scene of the crime that Yugene was not violent and should not be harassed. (Compl. at 2.) Plaintiff bases his claim against Defendant Ortler on discrimination and retaliation in violation of his First Amendment free speech rights. (Pl.'s Br. at 1.) Plaintiff alleges Defendant Ortler aggravated a pre-existing injury in Plaintiff's neck. (*Id.*) In addition, Plaintiff claims he feared he would be "beaten if he was not compliant." (*Id.* at 2.)

First Amendment retaliation claims are generally, but not always, brought in the public employment context. *McCook v. Spriner School Dist.*, 44 Fed. Appx. 896, 902–03 (10th Cir. 2002) (citing *Connick v. Myers*, 461 U.S. 138 (1983); *Pickering v. Board of Educ.*, 391 U.S. 563 (1968)). Here, Plaintiff is not an employee of the defendants, and no contractual relationship exists between the parties. Therefore, this court employs the standard set forth by the Tenth Circuit in *Worrell v. Henry*, 219 F.3d 1197 (10th Cir. 2000). *Worrell* recognized "an alternative

to the *Pickering* balancing is warranted when allegations of retaliatory conduct are directed at a defendant who is not the plaintiff's employer and when there is no contractual relationship between them." *Worrell*, 219 F.3d at 1212.

> [The test] require[s] proof of the following elements: (1) that the plaintiff 'was engaged in constitutionally protected activity'; (2) that the defendant's actions caused the plaintiff 'to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity'; and (3) that the 'defendant's adverse action was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct.'

*Worrell*, 219 F.3d at 1212.

### A. *Alleged Racially Derogatory Statement*

Plaintiff states in his Complaint that he "**believes**" Defendant Ortner told him to "shut up, n*****." (Compl. at 1, 2.) Plaintiff also testified in his deposition as follows:

> Q. Okay. So you're not sure whether the term was used, but you believe that it was; is that correct?
> A. Yes, **I believe** that's exactly what he said, from the movement of his lips.

(Defs.' Br., Ex. A-2 at 24, ll. 2–6 [emphasis added].) Plaintiff further testified:

> A. At that instant when I turned back, there was an officer in front of me. He hit me, **he said something to me**.

(*Id.* at ll. 19–21 [emphasis added].) This allegation is insufficient to create a genuine issue of material fact and must be disregarded. *See Tavery v. U.S.*, 32 F.3d 1423 n.4 (10th Cir. 1994) (a mere statement of belief is insufficient to support summary judgment and must be disregarded); *see also Jameson v. Jameson*, 176 F.2d 58, 60 (D.C. Cir. 1949) ("Belief, no matter how sincere, is not equivalent to knowledge.") Furthermore, Defendant Ortler denies calling Plaintiff a racially derogatory term. (Defs.' Br., Ex. A-6 [Ortler Decl. ¶ 6].) Plaintiff offers no other

evidence that Defendant Ortner actually made a racially derogatory statement. Without definite knowledge, Plaintiff cannot prove his First Amendment claim in this regard and summary judgment should be granted.

### B. *Defendant Ortner's Allegedly Hitting Plaintiff in the Chest*

Assuming Plaintiff's statements to the officers at the crime scene that Yugene was not violent and should not be harassed is constitutionally protected free speech under the *Worrell* factors, the court must then determine whether the remaining factors can be proven. Although the court feels that the issue of whether the defendant's alleged actions caused the plaintiff "to suffer an injury that would chill a person of ordinary firmness from continuing to engage in that activity" is a question properly decided at trial, that is not the case with the issue of whether the defendant's allegedly adverse action "was substantially motivated as a response to the plaintiff's exercise of constitutionally protected conduct" under *Worrell*. First, Plaintiff has presented no evidence to prove that Defendant Ortler's allegedly adverse action was substantially motivated as a response to Plaintiff's statements regarding his son. Second, Plaintiff has shown no evidence that Defendant Ortler's allegedly adverse action was substantially motivated as a response to Plaintiff's race. Third, Defendant Ortler denies hitting or shoving Plaintiff. (Defs.' Br., Ex. A-6 [Ortler Decl. ¶ 5].) However, taking Plaintiff's version of the events at the crime scene as true and assuming, *arguendo*, that Defendant Ortner did hit or shove Plaintiff, the more likely inference as to what caused this response is that Defendant Ortner was protecting the public and/or the crime scene. This inference makes sense, especially in light of the fact that as soon as Defendant Ortner was alerted by someone else that Plaintiff was Yugene's father,

Defendant Ortner walked away. (Compl. at 2.) Therefore, because Plaintiff cannot meet all three factors required under *Worrell*, he cannot prove his First Amendment rights were violated in this regard and summary judgment is properly granted.

## 2. *Claim for Fourth Amendment Violation for Unreasonable Search*

Plaintiff alleges Defendants Walker, Hoffman, Schott, and Erickson violated his Fourth Amendment right by entering his home under false pretenses to speak to Miss Nyugen. It appears Plaintiff is asserting a claim for an unreasonable search.[1] (Compl. at 1–2.)

A warrantless search of a suspect's premises is unreasonable *per se* under the Fourth Amendment unless the search falls within one of a carefully defined set of exceptions, such as a valid consent. *United States v. Butler*, 966 F.2d 559, 562 (10th Cir. 1992). Whether a consent to search was in fact voluntary or was the product of duress or coercion, express or implied, is a question of fact to be determined by the totality of the circumstances. *Schneckloth v. Bustamonte*, 412 U.S. 218, 227 (1973). In determining whether a consent to search is voluntary, a court should consider the following: physical mistreatment, use of violence or threats of violence, promises or inducements, deception or trickery, and the physical and mental condition and capacity of the defendant. *United States v. McCurdy*, 40 F.3d 1111, 1119 (10th Cir. 1994).

In this case, Plaintiff admits he consented to the search of Yugene's room. (Compl. at 4; Pl.'s Br. at 3.) Plaintiff asserts that he consented only after he was coerced. (Compl. at 1, 4;

---

[1]To the extent Plaintiff asserts claims related to his wife, Christina Johnson, and his daughter, the court has not addressed the claims specifically because neither Mrs. Johnson nor Mr. Johnson's daughter are plaintiffs to this action.

Pl.'s Br. at 3.) However, even though Plaintiff asserts he twice told the officers to leave his home, this occurred prior to his giving consent for the search. It is undisputed that once Plaintiff consented to the search he did not withdraw his consent or ask the officers to leave his home again. There is no evidence nor does Plaintiff allege any physical mistreatment, use of violence or threats of violence, promises or inducements, deception or trickery. In addition, there is no evidence of any physical or mental impairment by Plaintiff. Plaintiff admits he left the room to work on his computer while the officers were present. (Defs.' Br., Ex. A-2 at 64, l. 23–65, l. 11.) Plaintiff also admits he videotaped the deputy who performed the search. (*Id.*) Furthermore, Plaintiff admits he has approximately thirteen years' experience as a patrol officer for the U.S. Air Force and a degree in criminal justice and that he is familiar with the Fourth Amendment and its requirements. (*Id.*, Ex. A-2 at 21, ll. 8–20; 113, l. 15–115, l. 2; 31, l. 14–32, l. 2.) Therefore, Defendant's motion for summary judgment on Plaintiff's Fourth Amendment unreasonable search claim is properly granted.

3.     *Claim for Fourteenth Amendment Equal Protection Violation*

Plaintiff asserts Defendants Walker, Hoffman, Schott, and Erickson subjected him to mental stress, coercion, false imprisonment, and ethnic intimidation because of his race. (Compl. at 1–2.) "The Equal Protection Clause of the Fourteenth Amendment commands that no State shall 'deny to any person within its jurisdiction the equal protection of the laws,' which is essentially a direction that all persons similarly situated should be treated alike." *City of Cleburne v. Cleburne Living Ctr.*, 473 U.S. 432, 439 (1985) (quoting *Plyler v. Doe*, 457 U.S. 202, 216 (1982)). The challenged disparate treatment must be the result of purposeful

13

discrimination. *Harris v. McRae*, 448 U.S. 297, 323 n.26 (1980) (emphasis added). To prove a Fourteenth Amendment violation of equal protection, the plaintiff must demonstrate that the defendant's actions had a discriminatory effect and were motivated by a discriminatory purpose. *U.S. v. Armstrong*, 517 U.S. 456, 465 (1996). Here, Plaintiff has failed to allege any facts supporting "purposeful discrimination" of him by the defendants. Moreover, Plaintiff has failed to allege or prove any discriminatory effect. Thus, Defendants are entitled to summary judgment on Plaintiff's equal protection claim.

### *4.    Claim for False Imprisonment*

Plaintiff is also asserting a claim for false imprisonment. (Compl. at 1, 2.)

#### *A.    Fourth Amendment Claim*

The Fourth Amendment provides: "The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated. . . ." U.S. Const. amend. IV. To determine whether an officer violated the Fourth Amendment, courts must ascertain whether an alleged incident constitutes a seizure and, if so, whether such seizure was unreasonable. *Fuerschbach v. Southwest Airlines Co.*, 439 F.3d 1197, 1202 (10th Cir. 2006). "A seizure occurs for Fourth Amendment purposes when 'a reasonable person would have believed that he was not free to leave.'" *Fuerschbach*, 439 F.3d at 1202–03 (citing *Michigan v. Chesternut*, 486 U.S. 567, 573(1988)). A Fourth Amendment seizure occurs when a police officer restrains the liberty of an individual through physical force or show of authority. *Bradford v. Wiggins*, 516 F.3d 1189, 1196 (10th Cir. 2008) (citing *Terry v. Ohio*, 392 U.S. 1, 20 n.16 (1968)). Here, there is no evidence that Plaintiff believed he was not free to

leave his home at any time. Moreover, there is no evidence or allegation that any physical force was used by the defendants. Therefore, Plaintiff has failed to allege any facts supporting his claim that his Fourth Amendment rights were violated.

### B. *State Claim*

#### i. *Claim Against Arapahoe County Sheriff's Office*

Any tort claims against Arapahoe County Sheriff's Office is barred by the Colorado Governmental Immunity Act ["CGIA"]. Colo. Rev. Stat. § 24-10-106(1) bars any claims which lie in tort or could lie in tort against a public entity, unless the claim falls within one of the seven enumerated waiver provisions. The conduct asserted in this case does not fall within the waiver provisions, and the state law claim for false imprisonment is barred as to the Arapahoe County Sheriff's Office.

#### ii. *Claim Against the Individuals*

The elements of a false imprisonment claim are: (1) that defendant intended to restrict a plaintiff's freedom of movement; (2) that the plaintiff's freedom of movement was restricted for a period of time, however short, either directly or indirectly by an act of defendant; and (3) that plaintiff was aware that his freedom of movement was restricted. *Goodboe v. Gabriella*, 663 P.2d 1051, 1055–56 (Colo. App.1983). Here, the facts do not establish a claim for false imprisonment. Plaintiff has failed to allege that Defendants intended to restrict his freedom of movement or that his freedom of movement was restricted in any manner. Plaintiff was never prohibited from leaving his home. Even within his own home, Plaintiff's movement was unrestricted, as Plaintiff admits he left the room being searched to work on his computer while

the officers were present. (Defs.' Br., Ex. A-2 at 64, l. 23–65, l. 11.) Thus, Defendants are properly granted summary judgment on Plaintiff's claim of false imprisonment.

WHEREFORE, for the foregoing reasons, the court respectfully

RECOMMENDS that:

1. "Defendants' Motion and Brief for Summary Judgment" (Doc. No. 44) be GRANTED; and

2. "Plaintiff's Motion and Brief for Summary Judgment" (Doc. No. 52) be DENIED, and that this case be dismissed in its entirety.

## ADVISEMENT TO THE PARTIES

Within ten days after service of a copy of the Recommendation, any party may serve and file written objections to the Magistrate Judge's proposed findings and recommendations with the Clerk of the United States District Court for the District of Colorado. 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b); *In re Griego*, 64 F.3d 580, 583 (10th Cir. 1995). A general objection that does not put the District Court on notice of the basis for the objection will not preserve the objection for *de novo* review. "[A] party's objections to the magistrate judge's report and recommendation must be both timely and specific to preserve an issue for de novo review by the district court or for appellate review." *United States v. One Parcel of Real Property Known As 2121 East 30th Street, Tulsa, Oklahoma*, 73 F.3d 1057, 1060 (10th Cir. 1996). Failure to make timely objections may bar *de novo* review by the District Judge of the Magistrate Judge's proposed findings and recommendations and will result in a waiver of the right to appeal from a judgment of the district court based on the proposed findings and recommendations of the

magistrate judge. *See Vega v. Suthers*, 195 F.3d 573, 579-80 (10th Cir. 1999) (District Court's decision to review a Magistrate Judge's recommendation *de novo* despite the lack of an objection does not preclude application of the "firm waiver rule"); *One Parcel of Real Property*, 73 F.3d at 1059-60 (a party's objections to the Magistrate Judge's report and recommendation must be both timely and specific to preserve an issue for *de novo* review by the District Court or for appellate review); *International Surplus Lines Insurance Co. v. Wyoming Coal Refining Systems, Inc.*, 52 F.3d 901, 904 (10th Cir. 1995) (by failing to object to certain portions of the Magistrate Judge's order, cross-claimant had waived its right to appeal those portions of the ruling); *Ayala v. United States*, 980 F.2d 1342, 1352 (10th Cir. 1992) (by their failure to file objections, plaintiffs waived their right to appeal the Magistrate Judge's ruling). *But see, Morales-Fernandez v. INS*, 418 F.3d 1116, 1122 (10th Cir. 2005) (firm waiver rule does not apply when the interests of justice require review).

Dated this 18th day of December, 2008.

**BY THE COURT:**

Kathleen M. Tafoya
United States Magistrate Judge